(Decided Oct. 28th, 1863.)

DANIEL McCANN *vs.* THE BALTIMORE AND OHIO RAIL ROAD COMPANY.

The Balto. & O. R. R. Co. received upon their cars, at Baltimore, from S. C. & Co., two boxes containing a looking-glass and frame, the property of M, to be delivered at St. Louis, and gave a receipt therefor to S. C. & Co., stating that the boxes, when received, were in good order, &c. The boxes and their contents were broken and rendered valueless before reaching their destination, in consequence of rough handling. In an action by the owner of the goods against the R. R. Co., to recover their value, the company, in connection with the fact that the damage was done after the trans·shipment of the goods to the cars of another R. R. Co., forming a part of the route to St. Louis, relied on the following stipulation, contained in a memorandum upon said receipt: "The responsibility of the company is to terminate when the goods are unloaded from the cars, and that goods intended for all rail must be marked 'through by rail,' and river goods via Wheeling or Parkersburg must be marked on this ticket." The Balto. Co., claimed to be further discharged from its responsibility, by virtue of a release to them from S. C. & Co., by their clerk, "for any damages that

might occur in transportation within one year" from the date of the release. The damage was done within the year. There was no proof that S. & Co. made known to the R. R. Co. that they shipped said goods as the agent of M, or that the clerk of S. C. & Co. had been authorized to sign said release. HELD:

COMMON CARRIERS: RESPONSIBILITY OF.—That the responsibility of the railroad company ceased upon the "unloading of the cars" at the terminus of its road, the provision that the goods might in certain contingencies be transported by steam boat from Wheeling to St. Louis, forbidding the interpretation that the words, "unloading of the cars," could mean unloading of the cars at the place of delivery of the goods.

ACTS OF INFERIOR COURTS, WHEN PRESUMED TO BE CORRECT.—In the absence of proof in the record of the authority of the clerk of S. C. & Co. to execute the said release, this Court must presume that the action of the Court below, based upon the existence of such authority, was correct.

PRINCIPAL AND AGENT: RELEASE BY AGENT.—Though S. C. & Co. may have been the agent of M, there being no evidence that they disclosed their principal, the R. R. Co. was authorized to regard them as the principal, in which event their release was a protection to them if the damage was sustained on the road of said company; and the owner of the goods damaged having recognized the agency of S. C. & Co., was equally affected by the operation and tenor of the release.

Although the paper so called, was not technically a release, it was a special subsisting contract, operative during the period embraced in it.

APPEAL from the Court of Common Pleas of Baltimore City :

Action by the appellant against the appellee to recover the value of a looking-glass and frame placed as freight upon the cars of the Baltimore and Ohio Rail Road at Baltimore, to be delivered at St. Louis according to the terms of a special contract set out in the declaration. To this declaration the appellee pleaded six pleas; and an agreement was afterwards filed by which all errors of pleading were waived.

*1st Exception.* The plaintiff to support the issue on his part, proved by competent witnesses that he was the owner of the glass and frame shipped by Samson Cariss & Co. over the Baltimore and Ohio Rail Road to St. Louis, and that it was properly packed in a strong box, fit for the transit to St. Louis over the roads, and was well battened, and was

unbroken and tight when delivered to the railroad company in Baltimore, and that there was delivered to his agent the following receipt:

"BALTIMORE, *Nov'r* 29*th*, 1858.

Received of Samson Cariss & Co., in apparent good order, two boxes marked T. B. Edgar, St. Louis, care of —. At owner's risk.—For B. & O. R. R. Co. GRUBB, Clerk"

To this receipt was attached the following memorandum:

"*Conditions.*—Freight offering for transportation must be in good order, properly packed, and distinctly marked, otherwise the company will not be responsible. Nor will it be responsible for the leakage of liquids of any kind, nor for losses by the bursting of casks or barrels of liquids arising from expansion or other unavoidable causes, or damage occasioned by providential causes, or by fire, while in transit or at stations. The company is not responsible for accidents or delays from unavoidable causes, or for the decay or injury of perishable articles. The responsibility of the company under this receipt to terminate when the goods are unloaded from the cars. Goods intended for all rail, must be marked 'through by rail;' river goods, via Wheeling or Parkersburg, must be marked on this ticket.

"It is understood, and is a part of this agreement, that whenever the Ohio river navigation is suspended by low water or ice, the freight so contracted through by rail and river shall be forwarded from Wheeling or Parkersburg, by railroad rates, and actual costs of transfer between Wheeling and Bel Air, Ohio and Parkersburg, and Marietta and Cincinnati Rail Road stations. All goods carried by this company are charged at actual gross weight, except such articles as are provided for in our general tariff.

"The liability of the Baltimore and Ohio Rail Road Company to the shipper or consignee of the following goods, is in subordination to the above conditions."

The plaintiff also proved under a commission to St. Louis, that said boxes were broken by rough handling, and also proved the value of the said glass and frame.

The defendants then proved by their transportation agent, the mode in which goods are carried to St. Louis, and the manner of apportioning the freights of the various roads.

Upon cross-examination the plaintiff proved by this witness that the defendant had an arrangement to carry goods from Baltimore to St. Louis, and made contracts in Baltimore to carry goods to St. Louis via these roads.

The defendants then further proved the delivery of these goods to the Central Ohio road in good order and then offered in evidence a release from S. Cariss & Co. to said company, given in October 1858, for any damages that might occur in transportation within one year from said date, signed for S. Cariss & Co., under seal, by George Dukehart, and also proved by said witness that the contract offered in evidence is the receipt through, and that he did not know of any contract in writing between the companies; that a certain sum of $1.50 per hundred pounds to St. Louis is charged, each company to have its share when the transportation is completed.

The plaintiff and defendants thereupon each offered prayers, as follows:

*Plaintiff's Prayer.* The plaintiff prays the Court to instruct the jury, that if they shall find from all the evidence in this case, that the goods spoken of by the witnesses were shipped by the Balt. & O. R. R. Co. to St. Louis by the plaintiff, and that the said B. & R. R. Co. agreed to carry said boxes to St. Louis, from any of the facts proved in the cause, and shall also find from the evidence offered in the cause, that said goods were destroyed through gross negligence, that then the plaintiff is entitled to recover, notwithstanding the jury may also find that said destruction occurred beyond the terminus of the route of the Balt. & O. R. R. Co., provided the jury shall find from the evidence the agreement spoken of by the witness England as made between the three companies.

*Defendants' Prayer.* That if the jury shall believe from the evidence that the paper offered in evidence by the

plaintiff, (the receipt above of the Balt. & O. R. R. Co., with the memorandum,) as the receipt of the defendant for the glass mentioned in the *narr.*, was signed by their duly authorized agent, then said paper became a special contract between the owner of the goods and the said defendants; and if they shall further find that the release offered in evidence was executed by Samson Cariss and company, and that said plaintiff at the time of the happening of injury complained of, (should the jury find that such injury did in fact occur,) was the owner of the said glass, and that the said Cariss and company did not disclose their principal when they shipped the said glass, then the said plaintiff is bound by the terms of the said release, but is not entitled to recover unless the jury shall find from the evidence that the injury complained of, happened on the road of the defendants, or prior to their delivery of the said glass to the Central Ohio Rail Road Company, (should the jury find such delivery;) and that even should the jury find that the said injury happened on the road of the defendants, or while said glass was in their actual possession, the plaintiff is not entitled to recover, unless the jury find also that the said injury was the result of gross negligence on the part of the defendants or their agents. And that there is no evidence in the cause to show that the injury complained of happened on the road of the defendants.

The Court below (MARSHALL, J.) granted the prayer of the defendants, but rejected that of the plaintiff, whereupon the plaintiff appealed.

The cause was argued before BARTOL, GOLDSBOROUGH and COCHRAN, J.

J. *Malcolm*, for the appellant, contended, that the Court below erred in granting the prayer of the defendants and rejecting that of the plaintiff:

1st. Because there is no evidence in the cause to show that Cariss & Co. executed said release, nor is the knowl-

edge brought home to the plaintiff of the fact of said release having been executed, nor could the said defendants and Cariss & Co. bind said plaintiff by any private arrangement unknown to plaintiff.

2d. Because said release is not executed by Cariss & Co., but by a certain George Dukehart, who has not been shown by the proof to have had any authority to make or execute a release. *Dunlop's Paley on Agency*, 292, note m.

3d. Because a release cannot be made of damages to arise out of a contract which is not in existence at the time of the release; it must be of a *present subsisting contract or liability*, and not a mere possibility. 2 *Coke Littleton*, 459, note m, and 456. 2 *Pars. on Cont.*, 220. *Pierce, et al., vs. Parker*, 4 *Met.*, 80.

4th. Because said prayer limits the liability of said defendants to their own road, when the contract is for the entire transportation to St. Louis. *Redfield on Railways*, 275 and 276, and notes. See also *Id.*, sec. 134, p. 281, and notes. *Weed vs. R. R. Co.*, 19 *Wend.*, 534. *Frs. & Mechs. Bank vs. Cham. Trans. Co.*, 23 *Vermont*, 186. *Wyld vs. Peckford, et al.*, 8 *Mees. & Wels.*, 443.

5th. Because said release, if operative at all upon this plaintiff, is only a release for the line of the Balt. & O. R. R. Co. and its branches, and the proof shows that when the said boxes left said road they were in good order, and the breakage *must* therefore have occurred beyond the line of their road, and is not covered by said release.

6th. Because said prayer assumed that Cariss & Co. did not disclose the ownership of said goods, when there is no proof either way in reference thereto.

*J. H. B. Latrobe*, for the appellee, argued:

1st. That although Cariss may have been but the agent of the owner of the glass, yet inasmuch as there is no evidence that he disclosed his principal, the defendants were authorized to regard him as the principal, in which event his release protected them.

· 2nd. That whether the contract, of which the bill of lad-
ing was evidence, was made with the plaintiff, or with
Cariss, as principal, still it was a special contract such as
the defendants were authorized by their charter to make.
And one of the conditions of it being, that the liability of
the defendants should cease when the goods were "un-
loaded from the cars," they were not responsible after the .
delivery of them to the Central Ohio company, which re-
ceipted for them "in good order and condition" to the de-
fendants.

3rd. That even though the injury complained of may have
happened on the defendants' road, yet in the face of the
special contract there could be no recovery unless the plain-
tiff proved gross negligence on the part of the defendants.

There being no evidence that the injury happened on
the road of the defendants, there could of course have been
no evidence that the defendants were chargeable with gross
negligence.

Now, if the Court below was correct in granting that
part of the prayer which made Cariss the principal there
was an end of the case, for while it is admitted, that a re-
lease does not operate as a bar to a claim for damages,
growing out of *gross negligence*, yet in the absence of proof
of any such negligence, the release is conclusive.

The question has often arisen whether a common carrier
can discharge himself of his common law obligations by a
special contract, or by taking a release. Such question
does not arise here however, for the defendants made com-
mon carriers by their charter, are authorized by the Act of
Assembly of 1830, ch. 117, to make special contracts "on
such terms as may be agreed on by the parties," for the
transportation *inter alia* of "furniture;" within which cate-
gory the looking-glass in this case falls.

Was the Court right then, in instructing the jury that
Cariss, if he did not disclose his principal, was to be re-
garded as such himself, so as to make the release a suffi-
cient discharge of the defendants. The law here is too

plain to require authorities to support it, but the following cases may be referred to. 15 *East.*, 62. 12 *Vez.*, 352.

The defendants then having a right to make a special contract, made one with Cariss, who was to this intent the owner of the goods, and obtained from him a release as a part of this contract.

Now it is admitted this release does not discharge from gross negligence. But then the special contract stipulates that for no negligence whatever shall the defendants be responsible except it happen on the defendants' road, which is the practical meaning of the clause declaring that their responsibility is to terminate when the goods are unloaded from the cars, the cars of the defendants, which are unloaded at Wheeling, at which place, as appears by the receipt of the Central Ohio Rail Road, the looking-glass arrived in good condition.

The defendants therefore claimed exemption on two grounds: 1st. That there was no proof of gross negligence any where. 2nd. That there was proof that the glass left their road in good condition, and the Court's instruction properly left these facts to the jury.

The plaintiff's prayer conceded that except for *gross negligence* the plaintiff could not recover. But the plaintiff offered no evidence of such negligence or of any negligence other than might have been inferred from the fact that the glass was broken.

Ordinarily the carrier is an insurer, the happening of the loss establishes the liability. In this case the special contract prevented its being so. But the contract not operating to discharge from gross negligence, *the burden of proving such negligence was upon the plaintiff*, and offering no such proof, but relying on the happening of the accident, he must fail in his action.

GOLDSBOROUGH, J., delivered the opinion of this Court:

The action in this case was brought by the appellant against the appellee, to recover the value of a looking-glass

shipped over the road of the appellee from the City of Baltimore to the City of St. Louis, under a special contract set out in the appellant's declaration. To this declaration the appellee pleaded six pleas.

It was agreed that in this case, the following entry be made: "errors of pleading waived, without prejudice to the rights of the defendants or plaintiff, to raise any questions for the decision of the Court in the shape of prayers for instruction to the jury, that they might have done by any special pleading applicable to the premises."

At the trial, after the evidence had been submitted, the appellant and appellee each asked an instruction from the Court; the appellant's prayer was rejected, and the appellee's granted. From this ruling of the Court, this appeal was taken.

In examining the contract with the conditions annexed and the evidence in the cause, we are of opinion that the responsibility of the appellee ceased upon the unloading of the cars at the terminus of its railroad on the Ohio River. The provision incorporated in the contract that the property in controversy, might, in certain contingencies, be transported by steam boat from the Ohio River, to the City of St. Louis, forbids the interpretation that the "unloading of the cars," could mean unloading at the place of destination. This view of the contract justified the Court below in rejecting the appellant's prayer.

Considering the appellee's prayer, we find several distinct, substantive propositions:

The first, that "the paper offered in evidence by the plaintiff, the receipt of the B. & O. R. R. Co. with the memorandum," became a special contract, is clear, the appellant having declared on it as such. In reference to the paper purporting to be a release of Samson Cariss & Co., we find by reference to the exception taken by the appellant, that it states the appellees proved it, yet the evidence to establish the agency of Dukehart to execute it does not appear from the record; it does not contain the evidence upon which the Court may have acted. That evi-

dence ought to be set out in the record or in a bill of exceptions, in order that this Court could pass upon it. In the absence of testimony to the contrary, we must presume that the Court below acted correctly. See *Burtles vs. State, use of Turner,* 4 *Md. Rep.,* 277. *Reynolds vs. Negro Juliet, et al.,* 14 *Md. Rep.* 118. *Hollowell & Co. vs. Miller,* 17 *Md. Rep.,* 305.

Besides this, the appellant did not except to the admissibility of the release in the trial below.

As to the next branch of the instruction, involving the question of the effect of the release upon the appellant, we are satisfied of the correctness of the instruction. Though Cariss & Co. may have been but the agent of the appellant, yet as there is no evidence that they disclosed their principal, (the appellant,) the appellee was authorised to regard Cariss & Co. as the principal, in which event their release was a protection if the injury was sustained upon the appellee's road, and the appellant claiming the ownership of the property injured, recognized the agency of Cariss & Co., and was equally affected by the operation and tenor of the release.

The appellant's counsel objected that the paper writing referred to was not the release of Cariss & Co., yet in our opinion, though not technically a release, it was a special subsisting contract, operative during the period embraced in it, and any agreement of the appellee to transport such property as is named in this paper writing, during that period, was properly affected by it. It is not denied that the contract to transport the looking-glass in controversy, was made during the subsistence of the special contract between Cariss & Co. and the appellee.

There is no evidence that the injury was caused by the gross negligence of the appellee or its agents or that it happened at all upon the road of the appellee. Therefore this branch of the instruction was properly granted; and finding no error in the instruction or any part of it, the judgment must be affirmed.

*Judgment affirmed.*

(Decided Oct. 28th, 1863.)