JACOB J. BANKARD *vs.* THE BALTIMORE AND OHIO RAILROAD COMPANY.

*Practice—Liability of Common Carriers modified by Special Contract—Presumption of Negligence*

The Court may properly refuse to allow the plaintiff's counsel to argue a case before the jury, where there is no evidence in the cause legally sufficient, from which they could legitimately find a verdict for the plaintiff.

B entered into a contract with the Baltimore and Ohio Railroad Company, for the transportation of certain live stock over its road, and in consideration of a reduction in the charge for freight, agreed to "release the railroad company from any and all claims which might arise for damage or injury to staid stock, whilst in the cars of the company, or for delay in its carriage, or for escape thereof from the cars, and generally from all claims relating thereto; except such as might arise from the gross negligence or default of the agents or officers of the company acting in the discharge of their several official duties." In an action by B, against the railroad company to recover damages for certain cattle, which were lost and injured in their transportation over its road, it was HELD:

1st. That by the contract the burden was imposed on the plaintiff of proving not merely that the live stock was injured and damaged by accident and delay occurring in their transportation, but also that these were caused by the gross negligence or default of the defendant's agents.

Bankard *vs.* Baltimore and Ohio Railroad Co.

2nd. That the fact that some of the cattle were injured and lost by accidents on the railroad, while in the course of transportation, that considerable delays occurred in their carriage, and that they were damaged and lessened in weight and value from this cause, does not raise the presumption of negligence or default on the part of the agents of the railroad company within the meaning of the contract.

APPEAL from the Superior Court of Baltimore City.

The case is sufficiently stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., STEWART, BRENT, GRASON and ROBINSON, J.

*William C. Schley* and *William Schley*, for the appellant.

The defendant, under the Act of 1835, chapter 395, sec. 14, was bound by duty, to provide sufficient cars and engines at every depot, for the prompt transportation of all lading that might be offered; and the fact, that they had not sufficient, was *prima facie* evidence of neglect of duty.

The defendant had established a time table, and delay on the road in transportation, was *prima facie* evidence of neglect. It behooved the defendant, by clear proof, to excuse the delay. No such proof was adduced.

The contract with the Government of the United States, by which they acquired a preference in transportation, furnishes no excuse to the defendant. It is not the same as if the road had been seized by military power. Upon entering into that contract, the defendant should have made ample provision for the performance of its duty to the public; or, at least, should show that, upon deliberation, they honestly concluded, that such provision as they were making, would be ample and sufficient, or that it was impossible to procure a larger supply than they had actually provided, after due efforts.

The first prayer of the plaintiff raised the question as to the effect of the paper, called a *release*, signed by Porter, and which related to the third lot of cattle. It affirms, that if the

jury should find *negligence and misconduct*, on the part of the defendant, its servants and agents, resulting in the infliction of the damage specified, that said paper was no bar to recovery.

This prayer ought to have been granted. There was evidence to go to the jury of negligence and misconduct, even of gross negligence and actual misfeasance. The paper is not a release. If it can operate, at all, it can only operate as a special agreement. It is, on its face, void on grounds of public policy, where a common carrier is sued, upon his common law liability, or upon his statutory duty. In a case, where the suit is founded on the special agreement itself, as the sole cause of action, the plaintiff is bound by its provisions. He cannot claim under it, and against it. *McCann vs. Balto. & O. R. R. Co.*, 20 *Md.*, 202. The defendant's prayer concedes that *negligence*, if proved, would have charged defendant; but it asserts that there was *no* evidence of negligence. Even if gross negligence was necessary it is covered by the word misconduct; which implies misfeasance—not mere negligence, which might be, simply, *non-feasance;* but wilful wrongful action. *Phillips vs. Clarke*, 89 *E. C. L. Rep.*, 156; *Hinton vs. Dibbin*, 2 *Adl. & Ell. N. S.*, 646, (42 *Eng. C. L. Rep.*, 849;) *Redfield on Carriers*, &c., secs. 28, 40, 152 *to* 167, *and* 168 *to* 179; 1 *Parsons on Contracts*, 711 *n.* (*h.;*) *Angell on Carriers*, sec. 245; 2 *Greenl. on Ev.*, sec. 215.

The defendant's prayer is very comprehensive and open to many objections. It applied to the whole case; covered all the evidence, and all inferences which the jury might freely draw from the evidence, and denied in *toto* the plaintiff's right to recover.

Upon analysis of the prayer, it will be seen, that it assumes, *as matter of law*, that the defendant is *not* responsible, for any negligence or want of care, *in preparation* for transportation; but only for negligence *in* transportation; that the burden of proof of such negligence is on the plaintiff; and that there was *no* evidence to justify the jury, in finding a verdict for the

plaintiff. It says nothing of the effect of the paper called a release; nothing as to the *preference* accorded to the Government in transportation; nothing as to the *insufficiency* of cars and engines; nothing as to *the collision*.

The occurrence of delay, in prompt transportation, threw on the defendant the burden of proving, that it was not the result of negligence *in preparation ;* or of negligence in actual transportation, on the road.

The occurrence of a collision is *prima facie* evidence of negligence, and requires explanation; and all persons, in the service of the company should be produced to show the facts, to overcome this presumption of fault,

*John H. B. Latrobe,* for the appellee.

The obligations of a common carrier may be modified by special contract. This is settled law. In this case these obligations were modified for a valuable consideration.

Had the plaintiff, in the absence of any special contract, paid the ordinary rates of transportation, the receipt of the defendants for the cattle loaded on their cars would have bound them as insurers; and so far as delay was involved, the question whether it was an unreasonable delay or not, under all the circumstances, would have been an open one before the jury. But the plaintiff waived his rights in this respect, in consideration of a reduction in the rates. He took the case out of the category of carriers' contracts at common law. He placed it on the footing of any ordinary contract, and before he could recover, it was incumbent on him to prove a failure of the defendants in some one particular to come up to the full measure of their obligations.

BARTOL, C. J., delivered the opinion of the Court.

The appellant, plaintiff below, claims damages in respect of four lots of cattle transported for him on the railroad of the appellee.

In lieu of formal pleadings the case was tried under an agreement, and statement of facts set out in the record.

After the evidence was concluded the plaintiff offered three prayers which were rejected, and the defendant one prayer which was granted; and upon application by the counsel for the plaintiff for leave to argue the case before the jury, the Court below refused such application upon the ground that there was no evidence in the cause legally sufficient, from which the jury could legitimately find a verdict for the plaintiff.

Thereupon the plaintiff excepted to the rulings of the Court.

By granting the defendant's prayer, the Court instructed the jury "that by the contract between the plaintiff and the defendant, the defendant was only liable for a loss occasioned by negligence in the carrying of the cattle alleged to have been lost or injured; and that the burthen of proof of such negligence was on the plaintiff, and that there was no sufficient evidence to go to the jury to justify their finding a verdict for the plaintiff."

After giving this instruction to the jury, there was nothing left for discussion before them; and consequently there was no error in the Court's refusing to allow the plaintiff's counsel to argue the case before the jury. But the question presented by the appeal is whether there was error in granting the defendant's prayer.

It appears from the evidence that the contract between the parties in this case, was not the ordinary contract of a common carrier; but a special contract whereby the liability of the defendant was modified and limited. This is evidenced by papers, signed and sealed by the plaintiff or his agents, called *Releases* and were delivered to the defendant at the time when the several lots of cattle were placed on the cars for transportation. These releases were in the following terms:

" J. J. Bankard having this day loaded into the cars of the Baltimore and Ohio Railroad Company, numbered * * *

the following live stock, viz. * * * and the said railroad company having agreed to charge freight upon said live stock only at the rate of $80 for sixteen thousand pounds or less, instead of the first-class rate as fixed by the tariff of said company, I do hereby, in consideration of the said reduction of charge for freight, agree to release and do release the said railroad company from any and all claims which may or might arise for damage or injury to said stock whilst in the cars of said company, or for delay in its carriage, or for escape thereof from the cars, and generally from all claims relating thereto; except such as may arise from the gross negligence or default of the agents or officers of the said company acting in the discharge of their several official duties."

The terms of this paper are very broad and comprehensive, and materially affect the rights of the parties in this suit. It is well settled that the obligations of a common carrier may be modified by special contract, as was decided in *McCann vs. Baltimore & Ohio R. R. Co.*, 20 *Md.*, 202; and in *N. J. S. N. Co. vs. Merchants' Bank*, 6 *How.*, 344, 382; and *York Co. vs. Central R. R.*, 3 *Wallace*, 107.

By the Act of 1830, ch. 117, a supplement to the charter of the defendant, it is expressly authorized to make special contracts, "on such terms as may be agreed on by the parties" for the transportation *inter alia* "of horses and other living animals." There can be no question, therefore, as to the legality and binding force of the special contract made with the plaintiff in this case, whereby, for a valuable consideration, he released the defendant from liability for damage to the stock arising from accident, delay in transportation, or other causes, "except such damage as may arise from the gross negligence, or default, of the agents or officers of the said Company acting in the discharge of their several official duties." The effect of this contract is to impose on the plaintiff the burden of proving, not merely that the live stock was injured and damaged by accident and delay occurring in the transportation, but also that these were caused by the gross

negligence or default of the defendant's agents. 6 *How.*, 384. In this last respect, we think, there was an entire failure of evidence, and that the Court below was right in so instructing the jury.

The proof in the cause is that four lots of cattle were carried for the plaintiff, from the Ohio river to Baltimore, one in February, 1863, and the others in March, April and May, 1864. That some of them were injured and lost by accidents on the railroad while in the course of transportation, that considerable delays occurred in carrying the cattle, and that they were damaged and lessened in weight and value from this cause.

But these facts do not raise the presumption of negligence or default on the part of the agents of the railroad company within the meaning of the contract. Those were risks which the plaintiff assumed, and for which he agreed the railroad company should not be responsible, unless they resulted from negligence or default on the part of its agents. To establish this responsibility direct proof was necessary, or such facts and circumstances should have been shown, causing and accompanying the accidents and delays, as tended to fix upon the defendant's agents the charge of negligence or default. No such evidence is to be found in the record. On the contrary, all the proof explaining the causes of the accidents so far as any evidence on this subject was furnished, failed to establish negligence, or to make a case in which the presumption of negligence could legally arise. The fact that cars became detached or broke loose from a train on a summit, and running back collided with the train below injuring the plaintiff's cattle, is not of itself proof of gross negligence. Nor are the other facts that on one occasion a wheel broke causing damage; on another, the train ran off the track in turning round a curve, a car wheel having broken; and on another, that a collision occurred; of themselves, unaccompanied with other evidence, showing that they were caused by the neglect or default of the defendant's agents, sufficient

to bring the case within the exception in the contract, so as to render the defendant responsible. The same may be said of the delays that occurred in the transportation. By the terms of the contract, the defendant was relieved from liability for the consequences of delay, unless it arose from gross negligence, of which there is no evidence whatever. These transactions took place during the late civil war, when as the proof shows, transportation on the Baltimore and Ohio Railroad was constantly liable to interruption, not only from Confederate raids, but also by the necessary employment of the road, with its equipment, in the service of the United States Government. According to the evidence, the delays of which the plaintiff complains were owing altogether to these causes. These were well known to the plaintiff at the time he made his contracts, and he assumed upon himself the risks of such delays, and has no right to visit their consequences upon the defendant. Finding no error in the rulings of the Court below upon the prayers, the judgment will be affirmed.

*Judgment affirmed.*

(Decided 23d February, 1871.)