HENRY McCOY and DANIEL PARKHURST, trading as McCOY & PARKHURST *vs.* THE ERIE AND WESTERN TRANSPORTATION COMPANY.

*Construction of a Contract or Bill of Lading—Liability of Common Carriers limited by Special contract.*

However terms may be understood in their ordinary sense, if the parties have attached other, or unusual, or arbitrary meaning to them to be derived from their fair interpretation in the contract, they have the right so to employ them. But to accomplish such purpose and to vary the common understanding, the meaning ought to be plain and free from reasonable doubt.

The plaintiffs sued the defendants, who were common carriers, for damages sustained by the alleged negligence of the defendants in transporting a cargo of corn, consigned to the plaintiffs, from Chicago to Baltimore. The bill of lading was a printed form with the blanks filled up, in which was stated

McCoy & Parkhurst *vs.* Erie & Western Transp. Co.

"Received * * of * * the following packages (contents unknown,) in apparent good condition: Marks * * * * * ARTICLES: 25,000 bu. Twenty-five thousand bus. No. 2, Corn. Pro. Philadelphia. Marked and numbered as per margin, to be transported by the Anchor Line, * * on the following terms and conditions, viz: * * * * * * * It is further agreed that the Anchor Line, and the steamboats, railroads, and forwarding lines, with which it connects *shall not be held accountable for any damage or deficiency in* PACKAGES, *after the same shall have been receipted for in good order by consignees, or their agents, at* or by the next carrier beyond *the point to which this bill of lading contracts.* * * * * * * * *. It is further stipulated and agreed that in case of any loss, detriment or damage done to, or sustained by, any of the property herein receipted for, during such transportation, whereby any legal liability or responsibility shall or may be incurred, that company alone shall be held answerable therefor in whose actual custody the same may be at the time of the happening of such loss, detriment or damage, * * * *. And it is further agreed, that the amount of the loss or damage so accruing, so far as it shall fall upon the carriers above described, shall be computed at the value or cost of said goods or property, at the place and time of shipment under this bill of lading," &c. &c. &c. Evidence was offered at the trial tending to show that the corn was receipted for, "in good order" by the consignees' agents at Baltimore. HELD:

1st. That it was intended by the exemption clause in the bill of lading, to protect the defendant from any damage or deficiency in any package where the contents were unknown, after the same had been receipted for in good order; but that it was not intended to be applied to the "Corn" in question, and did not admit of such meaning.

2nd. That common carriers may by special contract limit their liability as recognized by the common law, where there seems to be reason and justice to sustain their exemption. But where such is the case it ought to be by clear and distinct terms.

3rd. That if it were the design of the defendant that said clause of exemption should apply to "corn" it was not expressed with sufficient clearness to preclude the plaintiffs from a recovery.

4th. That under the clause in the bill of lading—which was the written contract between the parties,—prescribing the mode of estimating any loss or damage which the plaintiffs were entitled to recover by reason of the non-performance of the contract by the defendant,—there was no occasion to resort to parol explanation, or to any course of dealing between the parties to enable the jury to ascertain the extent of the damage.

APPEAL from the Superior Court of Baltimore City.

This action was brought by the appellants against the appellee to recover damages sustained by the alleged negligence of the latter in transporting corn consigned to the former under the following bill of lading:

"Received, Chicago, June 18, 1873, of J. P. Rumsey & Co., the following packages, (contents unknown,) in apparent good condition:

| Marks. | Articles. |
|---|---|
| Order—J. R. Rumsey & Co., care McCoy & Parkhurst, Baltimore, Md. | 25,000 bu. Twenty-five thousand bus. No. 2 corn. Pro. Philadelphia. |

"Marked and numbered as per margin, to be transported by the Anchor Line, and the steamboats, railroad companies and forwarding lines with which it connects, until the said goods or merchandise shall have reached the point named in this bill of lading, on the following terms and conditions, viz:

"That the said Anchor Line, and the steamboats, railroad companies and forwarding lines, with which it connects and which receives said property, shall not be liable for leakage of oils or any kinds of liquids, breakage of any kind of glass, earthen or queensware, carboys of acid, or articles packed in glass, stoves and stove furniture, castings, machinery, carriages, furniture, musical instruments of any kind, packages of eggs, or for rust of iron and of iron articles, or for loss or damage by wet, dirt, fire, or loss of weight, or for condition of baling on hay, hemp or cotton; nor for loss or damage of any kind on any article whose bulk requires it to be carried on open cars; nor for damage to perishable or other property of any kind, occasioned by delays from any cause or by changes of weather; nor for loss or damage on any article of property whatever, by fire, while in transit or while in depots, elevators or places of trans-shipment, or at depots or landings at point of receipt or delivery; nor for loss or damage by fire, collision or the

dangers of navigation while on seas, bays, harbors, rivers, lakes or canals. And where grain is shipped in bulk, the said Anchor Line is hereby authorized to deliver the same to the Elevator Company at Erie, as the agent of the owner or consignee, for trans-shipment (but without further charge to such owner or consignee) into the cars of the connecting railroad companies or forwarding lines, and when so trans-shipped in bulk, the said Anchor Line, the said connecting railroad company or carrier shall be, and is in consideration of so receiving the same for carriage, hereby exempted and released from all liability for loss, either in quantity or weight, and shall be entitled to all the other exemptions and conditions herein contained. All goods or property under this bill of lading will be subject, at its owner's cost, to necessary cooperage or bailing, and is to be transported to the depots of the companies or landings of the steamboats or forwarding lines, at the point receipted to, for delivery.

"It is further agreed, that unless this bill of lading, properly endorsed, be delivered to the agent of the Anchor Line, at destination, on or before the arrival there of the herein above described property, the said Company is authorized to deliver the said property to the consignee, or to the party to whose care it is by this bill of lading consigned, and after such delivery the said Company shall be no longer responsible for or on account of this bill of lading, or for or on account of any assignment or transfer thereof.

"It is further agreed, that the Anchor Line, and the steamboats, railroads and forwarding lines, with which it connects, shall not be held accountable for any damage or deficiency in packages after the same shall have been receipted for in good order by consignees or their agents, at or by the next carrier beyond the point to which this bill of lading contracts. Consignees are to pay freight and charges upon the goods or merchandise in lots or parts

of lots as they may be delivered to them. The goods transported shall be subject to a lien, and may also be retained for all arrearages of freight due on other goods by the same consignee or owners.

"It is further stipulated and agreed, that in case of any loss, detriment or damage done to or sustained by any of the property herein receipted for, during such transportation, whereby any legal liability or responsibility shall or may be incurred, that Company alone shall be held answerable therefor, in whose actual custody the same may be at the time of the happening of such loss, detriment or damage, and the carrier so liable shall have the full benefit of any insurance that may have been effected upon or on account of said goods.

"And it is further agreed, that the amount of the loss or damage so accruing, so far as it shall fall upon the carriers above described, shall be computed at the value or cost of said goods or property, at the place and time of shipment under this bill of lading.

"This contract is executed and accomplished, and the liability of the companies as common carriers thereunder, terminates on the arrival of the goods or property at the station or depot of delivery, (and the companies will be liable as warehousemen only thereafter,) and unless removed by the consignee from the station or depots of delivery within 24 hours of their said arrival, they may be removed and stored by the companies at the owners' expense and risk.

"Notice.—In accepting this bill of lading, the shipper or other agent of the owner of the property carried, expressly accepts and agrees to all its stipulations, exceptions and conditions.

"In witness whereof, the agent hath affirmed to 2 bills of lading of this tenor and date, one which being accomplished, the others are to stand void.".

As the corn arrived in Baltimore, receipts were given for it by persons acting for the consignees, in each of which

it was stated, that the corn was received "in good order." The plaintiffs offered evidence tending to show that they had sustained damage through the negligence of the defendant.

*First Exception.*—The plaintiffs offered the following motion and prayer:

The plaintiffs except to the admissibility in evidence against them of the receipts offered in evidence by the defendant, for any other purpose than to shew that the corn mentioned in said receipts was received by or on behalf of the plaintiffs, and as *prima facie* proof that it was in good order when so received; and they pray the Court, under the exceptions reserved by them to the admissibility of said receipts, to exclude said receipts as evidence for any other purpose.

The plaintiffs also offered the six following prayers:

1. If the jury believe that the corn mentioned in the bills of lading, which have been given in evidence, was in good order when it was shipped in Chicago, under said bills of lading, and that when said corn was delivered to the plaintiffs in Baltimore, under said bills of lading, some of it was damaged, the burden of proof is on the defendant to show the cause of said damage; and unless the jury are satisfied from the evidence, that it arose from some cause for which the defendant is not responsible under said bills of lading, as interpreted by the Court to the jury, the plaintiffs are entitled to recover therefor in this suit.

2. That the defendant was bound, under said bills of lading, to provide vehicles fit for the transportation of said corn for the voyage, and at the season of the year, for and at which it undertook to transport the same.

3. That if said corn was damaged by green lumber used for grain-doors in the cars of the Pennsylvania Railroad Company, in which said corn was transported, but said damage was increased by the length of time said corn remained in said cars, the defendant is responsible in this

McCoy & Parkhurst *vs.* Erie & Western Transp. Co.

suit for the whole of said damage from said causes combined.

4. That the receipts given for said corn in Baltimore, offered in evidence by the defendant, are no bar to the plaintiffs' right to recover, if the jury believe it was not in fact in good condition when it was delivered to the plaintiffs or their agents in Baltimore.

5. If the jury believe that, before the bills of lading offered in evidence in this cause were given, there was an established usage or course of dealing between the plaintiffs and the defendant, in settling for damage to property shipped under similar bills of lading, to add the freight on such property to the point of destination to the cost thereof at the point of shipment, and the cost, if any, of unloading, as a basis for estimating damages, then the jury may, for the purposes of this case, adopt said usage or course of dealing, if, under the instructions of the Court, they think the plaintiffs entitled to recover.

[The following reasons for the refusal of the foregoing fifth prayer was written on the prayer by the Court, viz: *The Court thinks, and has so ruled, that the measure of damages by the terms of the contract, is the whole loss of the plaintiffs, computed upon the basis of the cost of the corn in Chicago, and the expenses otherwise attendant upon the transaction. In this case it is not necessary to resort to the course of dealing between the parties.*]

6. If the jury shall believe from the evidence, that the parties by whom the receipts produced by the defendant in evidence, were signed in the name of or on behalf of the plaintiffs, had no authority whatever in fact from the plaintiffs to do anything more than receive and sign receipts for the actual delivery of so much grain, or of cars containing so much grain, and were not in fact authorized to sign receipts or acknowledgments of any sort, in regard to the condition of said grain when received, or to return or abandon, or in any way affect any rights whatsoever of

McCoy & Parkhurst *vs.* Erie & Western Transp. Co.

said plaintiffs, growing out of its delivery in bad condition, or the non-performance of any duty of the defendant in regard thereto, (if the jury believe there was such,) then said receipts do not bind the plaintiffs, and cannot affect their rights in this action, except in so far as they admit the receipt of grain, or of cars containing it. And the plaintiffs (under their exceptions to evidence heretofore reserved) accordingly pray the Court to exclude the said receipts from the jury as evidence to bind the plaintiffs beyond the said admission of receipt merely.

The defendant offered sundry prayers, of which the following was granted, and the others, upon the suggestion of the Court, were withdrawn:

3. If the jury shall find from the evidence, that all of the corn for which the bills of lading of June 12th, 16th and 18th, offered in evidence in this case, were given, were transported from Chicago to Baltimore, and there by the defendant delivered to the plaintiffs and received by them; and shall further find that all of said corn is covered by the receipts offered in evidence by the defendant, and that the plaintiffs, prior to the delivery of said corn, and the taking of the said receipts therefor, had authorized the defendant to deliver said corn to the persons by whom said receipts are signed, and take their receipts therefor, or had authorized the said persons to receive and receipt for the same, then, although the jury should find from the evidence that said corn was damaged prior to the delivery thereof to the plaintiffs, in consequence of the use of improper grain doors in the cars, yet the plaintiffs under the terms of the said bills of lading, are not entitled to recover for such damage.

The Court (DOBBIN, J.,) overruled and refused the plaintiffs' motion and prayer, and their fourth, fifth and sixth prayers, but granted their first, second and third prayers; and also granted the defendant's third prayer, and suggested the withdrawal of its other prayers, upon the ground

that the granting of its third prayer decided the case in its favor, and the defendant thereupon withdrew its prayers.

The plaintiffs excepted to the action of the Court, in its refusal of their said prayer and motion, and of their fourth, fifth and sixth prayers, and to the granting of the defendant's third prayer.

*Second Exception.*—This exception was not passed upon by the Court and need not be inserted.

The jury rendered a verdict for the defendant, and judgment was entered accordingly. The plaintiffs appealed.

The cause was argued before BARTOL, C. J., STEWART, BOWIE, BRENT and GRASON, J.

*John H. Thomas* and *S. Teackle Wallis,* for the appellants.

*Bernard Carter* and *I. Nevett Steele,* for the appellee.

STEWART, J., delivered the opinion of the Court.

The plaintiffs brought their action for the recovery of damages for alleged neglect of the defendants, in the transportation of a quantity of corn, contracted to be moved from Chicago to Baltimore.

In the trial before the Superior Court of Baltimore City, two bills of exception were taken by the plaintiffs.

In the first, exception was taken to the admission of certain receipts offered in evidence, without the qualification proposed by the plaintiffs—to the refusal of the plaintiffs' fourth, fifth and sixth prayers, and the granting of defendant's third prayer.

In the second, exception was taken to the refusal of the Court to permit plaintiffs' counsel to argue the case before the jury, the Court determining there was not sufficient evidence to authorize a verdict for the plaintiffs.

The receipt for the transportation of the corn, or bill of lading, as it is called, constituted the contract between the

parties, and upon its true construction their rights must be determined in the action.

It contains a number of stipulations and conditions, and is mostly a printed form. Its date—the rates of transportation for the corn—order of Rumsey & Co., agents of the plaintiffs at Chicago—names of the plaintiffs' consignees at Baltimore, and the number of bushels of corn being in manuscript.

The printed part contains the language, "the following packages, (contents unknown,) in apparent good condition."

Afterwards, under the word "articles" in print, the number of bushels of corn is stated in writing.

One of its printed conditions provides, " that the defendants are not to be held accountable for any damage or deficiency in packages, after the same shall have been receipted for in good order by consignees, or their agent at the point of delivery."

The defendants delivered the corn to certain agents of the plaintiffs, who signed receipts of the following tenor : " Received from the Northern Central Railway Company, the following articles in good order"—then follow the number of bushels of corn—other receipts add the word "condition."

In reference to the effect of these receipts under the contract and its meaning in relation thereto, the discussion of their respective counsel was mainly directed.

The defendants contending, that the corn was to be understood as embraced under the language, " the following packages, (contents unknown,) in apparent good condition ; " and that the condition as to claim " for damage or deficiency in packages, after receipted for in good order by consignees or their agents," operated to preclude the plaintiffs from recovery.

Such a construction the plaintiffs denied, insisting that was not the meaning of the contract, but that the term

"packages" had reference to "goods unknown," and did not apply to the article of "corn" in question.

Construing the entire instrument with its printed and written portions, as constituting the contract between the parties, the meaning as to any particular condition or stipulation must be ascertained.

However terms may be understood in their ordinary sense, if the parties have attached other or unusual or arbitrary meaning to them, to be derived from their fair interpretation in the contract, they have the right so to employ them.

But to accomplish such purpose, and to vary the common understanding, the meaning ought to be plain and free from reasonable doubt.

This contract, using the words "the following packages, (contents unknown,) in apparent good condition," might and probably did mean to include articles referred to in the subsequent condition, under the designation of "packages;" but it did not import, that all articles, goods, merchandise and property, of whatever description, were to be classed and defined as "packages, (contents unknown,) in apparent good condition."

The contract, afterwards, specifying in writing, "corn" under the word "articles" in print, might very well be understood, as acknowledging the receipt of "corn" for transportation, amongst other articles.

There is another condition in the contract, referring to grain carried in bulk, specially.

"Packages (contents unknown,) in apparent good condition," would ordinarily apply to packages, as the contract itself defines them—contents unknown, equivalent to unknown articles, and from any thing that appeared outside in good condition. This could not apply to corn shipped in bulk, in any respect. It is not a reasonable construction to put upon the contract that the parties meant to describe the corn as a "package, contents un-

known, in apparent good condition," more especially, when it contains another provision particularly applicable to the transportation of such article.

The bill of lading makes use of various terms in describing the articles to be transported, and it does not undertake to use the term "packages," to define all descriptions of property.

It is quite evident, that the company intended by the condition in question, to protect itself from any damage or deficiency in "any package where the contents were unknown," after the same had been receipted for in good order, but that it was designed to be applied to the "corn" in question, or that it can fairly admit of such meaning, is without foundation.

Common carriers may, by special contract, limit their liability, as recognized by the common law, where there seems to be reason and justice to sustain their exception. *Bankard vs. B. & O. R. R.*, 34 *Md.*, 197 ; *Railroad Company vs. Lockwood*, 17 *Wallace*, 357.

But where such is the case, it ought to be by clear and distinct terms. Here the defendants had prepared the printed form of the contract, and it was a duty they owed to themselves, if they intended to have such an article as corn embraced by the condition referring to packages receipted for, so as to bar the plaintiffs from recovery afterwards, and thus modified their ordinary liability ; to have used plain and unequivocal terms for that purpose.

If such was their design by this contract, they have failed to use appropriate language to that effect.

Under this view of the terms and conditions of the contract, the receipts of the agents did not conclude the plaintiffs from a recovery; their motion and prayer, and their fourth and sixth prayers as to the effect of the receipts, ought to have been granted, and the third prayer of the defendants refused.

We think the plaintiffs have no cause to complain of the modification of their fifth prayer.

The contract between the parties was in writing, and if the plaintiffs were entitled to recover damages, by reason of its non-performance by the defendants, there was no occasion to resort to parol explanation, or to any course of dealing between the parties, to enable the jury to ascertain the extent of the damage.

If any loss or damage occurred to the plaintiffs, the contract stipulated, it was to be computed at the value or cost of the goods at the place and time of shipment.

The Court in its modification having announced that it had ruled, that the measure of damages by the terms of the contract, was the whole loss of the plaintiffs computed upon the basis of the cost of the corn in Chicago, and the expenses otherwise attendant upon the transaction, allowed the plaintiffs, the opportunity and ample latitude to introduce evidence of all the loss they may have sustained, including the measurement of the corn, as that would be an item, in "the expenses otherwise attendant upon the transaction."

From the view we have taken of the case, it is unnecessary to decide the point made in the second exception.

*Judgment reversed, and*
*new trial ordered.*

(Decided 4th June, 1875.)