# MERCHANTS AND MINERS' TRANSPORTATION COMPANY *vs.* MAURICE H. EICHBERG ET AL.— M. H. EICHBERG ET AL. *vs.* CENTRAL OF GEORGIA R. CO.

*Carriers—Contract of Shipment Contained in Bill of Lading and in Letters—Stipulation in Bill of Lading That Negligence of Carrier Shall Not Be Presumed—Waiver of Stipulation as to Time of Making Claim for Damages—Measure of Damages—Action of Tort Against Two Connecting Carriers—No Evidence of Carrier's Negligence.*

When before a shipment is made, the agent of the carrier writes a letter to the shipper stating the terms upon which freight will be carried, and the correspondence between the parties refers to the bill of lading, then the contract of shipment is contained in the letters and the bill of lading construed together.

When a bill of lading provides that negligence shall not be presumed against the carrier, then the burden of proof is cast upon the shipper to prove that an injury to the goods was caused by the negligence of the carrier.

While a common carrier cannot contract against liability for its own negligence, yet it may make an agreement that puts the burden of proving its negligence upon the shipper.

A bill of lading provided that if the shipper should elect not to accept the reduced rate at which the goods would be carried under a condition that negligence is not to be presumed against the carrier, then he should give notice in writing to the agent of the carrier, and by paying a somewhat higher rate, the common law liability of the carrier would attach except as limited by statute. *Held,* that when a shipper chooses to accept the reduced rate, he is bound by the provisions of the bill of lading, which put upon him the burden of proving that damage to the goods in the course of transit was caused by the negligence of the carrier.

The stipulation in a bill of lading requiring a claim for damage to the goods to be made in writing within thirty days after

delivery is waived when the agent of the carrier, with full knowledge of the facts, makes no objection on that ground to a claim presented by the shipper.

If the bill of lading stipulates that the amount of loss or damage for which the carrier is liable shall be computed at the value of the property at the time and place of shipment, then it is not necessary, in an action to recover such damage, to prove the value of the property at the place of delivery.

When goods transported by two connecting carriers are delivered in a damaged condition, an action of tort may be brought against both carriers.

The plaintiff shipped goods, as both consignor and consignee, from Atlanta, Ga., to Baltimore, Md., under a bill of lading issued by the railroad company which first received the goods and carried them from Atlanta to Savannah, and there delivered them to a steamship company for final transportation to Baltimore. Upon receiving the goods, the plaintiff alleged that they had been damaged in the course of transit and brought this action against both carriers. The bill of lading provided that no carrier should be liable for loss or damage not occurring on its portion of the route, and that negligence should not be presumed against any carrier. In said action, the plaintiff offered no evidence to show that the damage had been caused by the negligence of either carrier. *Held,* that, since under the bill of lading, no negligence can be presumed against the railroad company from the mere fact that the goods which had been delivered to it in good condition were received at their destination from the steamship company in a damaged condition, the trial Court properly instructed the jury that the plaintiff is not entitled to recover against the railroad company, because there was no legally sufficient evidence in the case that the goods were injured when in its possession by its negligence.

*Held,* further, that it was error on the part of the trial Court to refuse to instruct the jury, at the request of the steamship company, that there was no legally sufficient evidence that the goods were damaged while in its possession, and that therefore, under the pleadings, the plaintiff was not entitled to recover against that company.

*Decided January 12th, 1909.*

Appeal from the Superior Court of Baltimore City (EL-
LIOTT, J.)

*Plaintiffs' 1st Prayer.*—If the jury believe from the evi-
dence that on June 12th, 1906, the plaintiffs wrote to Mr. C.
S. Hoskins, Freight Traffic Manager of the defendant, a let-
ter, of which a copy has been offered in evidence, and that on
June 25th, 1906, the said C. S. Hoskins, Freight Traffic
Manager of the defendant, sent the plaintiffs the letter of
June 25th, 1906, which has been offered in evidence; and
that subsequently thereto at the times mentioned in the evi-
dence, in the execution of the agreement made by said two
letters, the plaintiffs delivered to the Central of Georgia Rail-
way Company at Atlanta, Georgia, the rolls of wrapping
paper, the bundles of paper bags, and the machinery men-
tioned in the evidence, in good condition to the Central of
Georgia Railway Company to be transported by it and by the
defendant, the Merchants and Miners' Transportation Com-
pany, to Baltimore; and that some of the said rolls of wrap-
ping paper and some of said bundles of paper bags, and some
of said machinery when delivered by the defendant to the
plaintiffs in Baltimore, was in a damaged condition and that
a day or so after the arrival of said goods in Baltimore, one
of the plaintiffs and their attorney called at the office of the
defendant in Baltimore and requested permission to remove
said goods before paying the freight therefor, and stated that
said goods were in a damaged condition, and the agent of the
defendant refused to permit the removal of the goods before the
freight was paid, and stated that he knew all about the goods
in question, and thereupon the plaintiffs paid the freight, and
removed said goods; and that as the goods were removed, both
a representative of the plaintiffs and a representative of the
defendant made notations as to the condition of said goods;
and that with reasonable diligence after receiving said goods,
the plaintiffs ascertained the condition of said goods and as

soon as they reasonably could, had their counsel write to the defendant the letter mentioned in the evidence, dated October 6th, 1906; and that subsequently thereto the correspondence mentioned in the evidence passed between the defendant and its officers and the plaintiffs and their counsel, Mr. Rosenheim, then the verdict must be for the plaintiffs. (*Granted.*)

*Plaintiff's 2nd Prayer.*—If the verdict should be for the plaintiffs, then the jury are to allow them as damages the difference between the sum of money which was the market value in Baltimore of the goods at the time the plaintiffs received them from the Merchants and Miners' Transportation Company in the damaged condition in which the goods then were, and the sum of money which would have been the market value of the same goods in Baltimore at the same time if they had been delivered to the plaintiffs in good condition. And the jury may in its discretion allow the plaintiffs interest, on the sum awarded as damages from the time the said goods were delivered to them in Baltimore to the day of the verdict. (*Granted.*)

*Defendant's 2nd Prayer.*—That there is no legally sufficient evidence in this case that the goods referred to in the declaration and the evidence, or any of them, were injured or damaged while in the possession of the Merchants and Miners' Transportation Company, and therefore, under the pleadings in this action, the plaintiffs are not entitled to recover against the Merchants and Miners' Transportation Company. (*Refused.*)

*Defendant's 8th Prayer.*—If the jury shall find from the evidence that the paper and paper bags therein referred to were delivered by the Merchants and Miners' Transportation Company to the plaintiffs in substantially the same condition as they were in when it received them at Savannah, then the plaintiffs are not entitled to recover against said Company on account of any alleged damage to the same. (*Refused.*)

*Defendant's 9th Prayer.*—This defendant, the Merchants and Miners' Transportation Company, prays the Court to

instruct the jury that the measure of damages for any of the goods mentioned in the evidence that they shall believe were injured by reason of the negligence or default of this defendant, is the difference between the market value of any goods so injured in Baltimore at the time of their delivery to plaintiffs, and the market value of such goods, if uninjured, at such time and place,               and inasmuch as the plaintiffs have offered no evidence of such market value in Baltimore of the goods mentioned at the time of their delivery to the plaintiffs and of the market value at the same time and place of such goods if uninjured. The verdict of the jury, if for the plaintiffs, must be for nominal damages only. (*Refused.*)

The cause was argued before Boyd, C. J., Briscoe, Pearce, Schmucker, Burke, Thomas and Worthington, JJ.

*John J. Donaldson* and *Charles A. Marshall,* for the Merchants and Miners' Transportation Company and Central of Georgia Ry. Co.

1. It would hardly seem needful to cite authorities for the position that where bills of lading are issued for a shipment they are the evidence, and the exclusive evidence, of the contract, unless there be some other writing connected with them and varying the terms they contain. *Brehme* v. *Adams Ex. Co.,* 25 Md. 328. *De Wolff* v. *Adams Ex. Co.,* 106 Md. 472.

It is submitted, however, that there is nothing in the letters referred to that is in any way inconsistent with the contract evidenced by the bills of lading.

The letter of plaintiffs to Hoskins mentions the rate per hundred weight to be paid for the carriage of the goods (being the rate actually paid) ; states it as a condition of the shipment that the Merchants and Miners' Transportation Company should either inspect the shipment before it left Atlanta or accept the clean bill of lading of the Central of Georgia

for evidence that the shipment left in good order, and that. in case any damages were shown, the Merchants and Miners' Transportation Company would agree to settle such damage within thirty days after arrival of goods in Baltimore.

The answer to this of Mr. Hoskins gives the same rates, but in dealing with the matter of any claim made, says: "We agree to settle any claim for which the Merchants and Miners' Transportation Company and/or Central of Georgia Railway are *responsible* within thirty (30) days after the conclusion of our investigation and within sixty (60) days after the arrival of the shipment in Baltimore."

Assuming, for the moment, that the two letters are at one in their terms, they contain nothing whatever in *contradiction* of those contained in the bills of lading, but merely *add* a term dealing with the *time of settlement* of any loss for which the cariers are responsible.

It will be observed that the plaintiffs looked to the issue of a bill of lading for the shipment. Their letter of June 12, 1906, to Hoskins reads: "You will either inspect the shipment before it leaves Atlanta or accept the clean B/L (Bill of Lading) of the Central of Georgia, etc."

Even without this, however, we take it to be clear law that where there is a treaty by correspondence between carrier and shipper looking to the carriage of goods, the parties must be taken to intend to incorporate into their agreement the well-known usages of shipping, among the rest the issue of bills of lading for the shipment, and accordingly when such bills of lading are issued, they must be taken as fixing the rights and liabilities of the parties. *Donovan* v. *Standard Oil Co.,* 155 N. Y. 112.

If we are right in our contention, the contract of carriage is to be found in the correspondence *and* the bills of lading. taken together, and the Court below erred in finding it only in the correspondence.

2. Even if there were any inconsistency between the correspondence and the bills of lading, these being later and on their face complete, superseded all that had gone before, and

became the exclusive evidence of the contract between the parties. *Leake, Contr.,* 173-4; *Knight* v. *Barber,* 16 M. & W. 66; *Howard* v. *W. & S. R. R. Co.,* 1 Gill, 311; *Delamater* v. *Chappell,* 48 Md. 244; *Franklin* v. *Claflin,* 49 Md. 24; *Warren Co.* v. *Keystone Co.,* 65 Md. 547; *Gorsuch* v. *Rutledge,* 70 Md. 272; *Long* v. *N. Y. H. R. R. Co.,* 50 N. Y. 76; *The Caledonian,* 43 Fed. R. 680.

When the contract between the parties is in writing, the antecedent letters between the parties are inadmissible. *Stockham* v. *Stockham,* 32 Md. 196, 207; *Badart* v. *Foulon,* 80 Md. 579, 591.

Nor is this the only difficulty in holding the letters in question the exclusive evidence of the contract.

That of plaintiffs of June 12, 1906, is of course to be treated as an offer, but Hoskins' reply of June 25 is not an acceptance, because it varies the terms. It can only be taken then as a counter offer. But, if so, where is there evidence of an acceptance of it by plaintiffs?

Not in the shipment of the goods, because that was done under the contracts evidenced by the bills of lading issued and accepted by plaintiffs at time of shipment.

We therefore submit that in any point of view whether (1) the contract be found in the correspondence and the bills of lading taken together (the correct construction as we think) or (2) exclusively in the bills of lading, it is to these latter we must look to ascertain the rights and liabilities of the parties.

The Bills of Lading provided that (1) "No carrier shall be liable for "loss or damage not occurring on its portion of the route. * * *"; and (2) "Nor shall negligence be presumed against any carrier."

The provisions first referred to limiting the liability of each carrier to its own route, merely makes as a term of the contract the rule of the Common Law in force in Maryland. *B. & O. R. R. Co.* v. *McCann,* 20 Md. 202; *B. & O. R. R. Co.* v. *Green,* 25 Md. 72; *P. W. & B. R. R. Co.* v. *Harper,*

29 Md. 330; *P. W. & B. R. R. Co.* v. *Lehman,* 56 Md. 209; *Hoffman* v. *Valley R. R. Co.,* 85 Md. 391.

As we have endeavored to show there is nothing in the correspondence to make the Merchants and Miners' Transportation Company responsible beyond its own line—there is only an added term as to mode of settlement for losses for which either carrier was "responsible."

The plaintiff offered no proof of any damage done on its line. It would therefore seem clear that defendant's second and fourth prayers should have been granted.

Further, it was proved by the Merchants and Miners' Transportation Company that it delivered the goods to plaintiffs at Baltimore in substantially the same condition in which it received them at Savannah from the Railway Company, and plaintiffs offered no evidence whatever in contradiction of this. We therefore submit that defendant's eighth prayer should have been granted.

The bills of lading expressly provide: "*nor* shall negligence be presumed against any carrier."

That such a provision is valid there can be no doubt. *N. J. Steam Nav. Co.* v. *Bank,* 6 How. 384; *Bankard* v. *B. & O. R. R. Co.,* 34 Md. 197.

There is no proof of negligence on the part of either carrier, and as to the Merchants and Miners' Transportation Company there is proof entirely uncontradicted to the contrary, viz: that the goods were by it delivered at Baltimore in the same condition in which it had received them at Savannah. And therefore plaintiffs' first prayer should have been rejected and defendant's second granted.

There was no dispute as to the rule of damages, viz: the difference between the market value at Baltimore on arrival of the goods as injured and the market value there and then of the same goods if uninjured. As to such market value there is no proof whatever in the Record, and it is therefore submitted that the Court erred in overruling the special exception and granting plaintiffs' second prayer and refusing defendant's ninth prayer.

The action was brought against the two companies as JOINT-tortfeasors. After the acquittal, by the Court's direction, of one of the companies, the plaintiffs *did not amend,* but the case proceeded against the remaining defendant under a declaration charging a JOINT tort.

It is elementary that a tort must be joint to sustain a joint action. *Dicey, Parties to Actions* [431-2]; *Nicoll* v. *Glennie,* 1 M. & S. 588; *Bennett* v. *Fifield,* 13 R. I. 139. Here the *proof* is of the single *tort* of the Merchants and Miners' Transportation Company, and thus a variance from that alleged in the declaration.

There was no error in granting the prayer at the conclusion of plaintiffs' testimony directing the acquittal of the Central of Georgia Railway Company.

Whether the contract of carriage be found in the correspondence (to which, however, *this defendant* was not a party) and the bills of lading together, or in the bills of lading alone, yet, as we have urged, in the latter is to be found the measure of the rights and liabilities of the parties.

There is in the record no proof of negligence on its part, and by the terms of the bills of lading negligence is not to be presumed against any carrier. So, even if there were direct proof (as there is not) that the goods were damaged while in the possession of the Central of Georgia Railway Company, this would be no proof of negligence.

Moreover, under the pleadings (to which the prayer in question expressly refers) the proof to entitle plaintiffs to recover must have been of a *joint* tort, and of this there is none in the record.

*William S. Bryan, Jr.,* (with whom was *Benj. Rosenheim* on the brief), for M. H. Eichberg *et al.*

The prayers directing the jury to find a verdict for the Merchants and Miners' Transportation Company were properly rejected. The plaintiffs' testimony showed very clearly that the goods were in good condition when delivered to the initial carrier, the Central of Georgia Railway Company, at

Atlanta, and that these same goods were in very bad condition when received from the terminal carrier, the Merchants and Miners' Transportation Company.

It is a well settled rule that when goods are delivered in good order to the initial carrier and are received in bad order from the terminal carrier, the presumption is that they were injured by the negligence of the terminal carrier. 4 *Elliott on Railroads,* section 1450; *Penn. R. Co.* v. *Naive,* 64 L. R. A. 443, 449; *Orem Fruit Co.* v. *N. C. Ry. Co.,* 106 Md. 1.

Besides this general presumption of fault in the terminal carrier, because he can show whether or not the goods were received by him in bad order, and the shipper cannot show whether or not the goods were received in bad order by such terminal carrier, it must be remembered that in consideration of their getting the business, the Merchants and Miners' Transportation Company had given a special rate for the entire movement of the freight and had agreed to make themselves responsible as carriers for the whole transportation. "We agree to settle any claim for which the Merchants and Miners' Transportation Company and for Central of Georgia Railway are responsible within thirty (30) days after the conclusion of our investigation, and within sixty (60) days after the arrival of the shipment in Baltimore"—wrote the Freight Traffic Manager of the Merchants and Miners' Transportation Company to the Paper Mills Company when he was endeavoring to secure the business.

It is very clear that it was entirely competent for the Merchants and Miners' Transportation Company to agree to act as carrier for The Paper Mills Company beyond the limits of its own line. 2 *Elliott on Railroads,* sect. 364; *Hoffman* v. *C. & P. R. R.,* 85 Md. 395; *B. & O.* v. *Green,* 25 Md. 72, 90; *Bank of Kentucky* v. *Adams Express Co.,* 93 U. S. 181, 183; *Boscowitz* v. *Adams Express Co.,* 93 Ill. 523.

In the case at bar, the Merchants and Miners' Transportation Company made the contract of carriage with The Paper Mills Company and received the entire freight charge from them.

Counsel for the Merchants and Miners' Transportation Company in the Court below endeavored to hold The Paper Mills Company to the terms of the Bills of Lading in enforcing their claim to compensation for injury done their goods. It is suggested that the letter of June 25th, 1906, is the effective contract of carriage. "Where there are two contracts of shipment, both representing the same shipment, the carrier cannot in the event of a loss elect that the one containing limitations of its liability shall constitute the real contract of shipment, but  *  *  *  the contract which least limits the carrier's liability will be taken as the true contract of the parties." 5 *Am. & Eng. Encyclop. of Law* (2nd Ed.), 296.

"Special contracts limiting the common law liability of carriers are in derogation of the common law, and are to be construed most strongly against the carrier in so far as they operate to relieve him from liability; any ambiguity in them is to be solved in favor of the shipper. Thus, where there are two contracts limiting the carrier's liability, he is bound by the one which is less beneficial to himself." 5 *Am. & Eng. Encyclop. of Law* (2nd Ed.), 335-338.

After the Merchants and Miners' Transportation Company contracted for and undertook the carriage of The Paper Mills Company's goods from Atlanta to Baltimore, it became its duty to carry such goods carefully, and if it failed to do so it was within the power of The Paper Mills Company to sue it either in contract or in tort. *B. & O.* v. *Pumphrey,* 59 Md. 399. "The mere fact that there is a special contract, varying and limiting the carrier's common law liability, does not prevent the party injured from suing in tort, if he prefers that form of action. The undoubted rule, both in England and in this country, is that the party aggrieved has his option to sue on the contract or in tort for a breach of the duty arising therefrom." 3 *Encyclopedia of Pleading and Pract.,* 823-4.

This being an action of tort against both defendants there is no difficulty about recovering against one of them only. *Poe on Pleading,* sects. 296, 526, 528.

Therefore the First Prayer of the Merchants and Miners' Transportation Company was properly rejected by the Court below.

The Fifth Prayer of the Merchants and Miners' Transportation Company sets up the defense that the terms of the Bills of Lading provide: "Claim for loss or damage must be made in writing to the agent at point of delivery promptly after arrival of the property, and if delayed for more than thirty days after delivery of the property or after due time for the delivery thereof, no carrier hereunder shall be liable in any event," and inasmuch as by the uncontradicted evidence in this action the plaintiffs did not so present their claim or claims in writing to such agent within the time specified by the above-mentioned provision the verdict must be for defendant.

The facts stated in plaintiffs' first prayer when found by the jury, as they were when the verdict was rendered for the plaintiffs, showed: (*a*) that it would have been highly unreasonable under the circumstances to have required the shippers to give the carrier the written notice called for; and (*b*) that by replying to the letter of October 6th, 1906, the defendant waived any right it might otherwise have had to rely on such want of written notice.

It is true that the carrier may lawfully stipulate by contract that notice of a claim for damages shall be given within a specified time in order to be valid, and such stipulation is regarded as reasonable. The construction put upon these stipulations must, however, be reasonable and adapted to the circumstances of each case. 3 *Am. and Eng. Encyl. of Law* (1st Ed.), p. 15; *Express Co.* v. *Caldwell,* 21 Wallace, 264.

"If the circumstances are such that the loss or damage cannot by the exercise of reasonable diligence be discovered within the time limited, the presentation of the claim within a reasonable time thereafter will be sufficient; and, indeed, it has been held that if the stipulation is unreasonable as applied to the circumstances of the particular case, no notice at all is

necessary." 4 *Elliott on Railroads,* sect. 1512. See also:— 5 *Am. and Eng. Encyc. of Law* (2nd Ed.), 323.

This clause or stipulation as to the time in which the shipper can make a claim has no application where the carrier is, of necessity, aware of the loss and its extent, or where the injury to goods was examined by the carrier's agent in person. 5 *Am. and Eng. Ency. of Law* (2nd Ed.), 324-5.

So the stipulation requiring the claim to be presented within a specified time may be waived by the carrier. 5 *Am. and Eng. Ency. of Law* (2nd Ed.), 322, 323, and *note* 1; *Wood* v. *Southern R. R.,* 118 N. C. 1056; *Hess* v. *Mo. Pac. R. Co.,* 40 Mo. App. 202.

Besides all these considerations, the letter of June 25th, 1906, which is the effective contract of carriage of this paper and machinery, has no stipulation in it requiring a claim in writing to be made by the shipper within thirty days. As already shown, it simply agrees to settle the claims for losses for which itself or the Central of Georgia Railway Company might be responsible, within thirty days after the conclusion of their investigation and within sixty days after the arrival of the shipment in Baltimore.

There is no merit in the special exceptions to the plaintiffs' second prayer on the ground that there is no legally sufficient evidence of what was the market value in Baltimore of the goods mentioned in this suit in their damaged condition, nor of what would have been the market value of such goods in Baltimore if they had been undamaged. Mr. Hirsch specifically testified on both of these points.

The measure of damages where goods are injured during transportation by a carrier is as set forth in plaintiffs' second prayer. 5 *Am. & Eng. Encyc. of Law* (2nd Ed.), 373; *Idem,* page 382; *B. & O.* v. *Pumphrey,* 59 Md. 390.

This same testimony is also the reason why the learned Judge below was right in rejecting the defendant's ninth prayer which claimed that there was no evidence of the market value of the goods damaged, and that, therefore, the verdict should be for nominal damages only.

As there was testimony that the goods mentioned in this case were in good condition when delivered to the Central of Georgia Railway Company, and were damaged when delivered to the consignee, the Central of Georgia could only exonerate itself by proving that it delivered the goods in proper condition to the connecting carriers, the Merchants and Miners' Transportation Company. "When goods are delivered in good condition to an initial carrier to be by it delivered for further transportation to a connecting carrier, and the goods at their destination are delivered in a damaged condition, the burden of proof, in an action against the first carrier, is on it to show delivery in a good condition to the connecting carrier, when such proof is within its power." *Orem Fruit Co.* v. *N. C. R. Co.,* 106 Md. 1.

The case at bar shows how essential this rule is, if justice is to be obtained against these transportation companies. In this case after the granting of the prayer instructing the jury that there was no evidence that the goods were injured or damaged while in the possession of the Central of Georgia Railway Co., and that therefore the verdict must be for that defendant, the Merchants and Miners' Transportation Co., the connecting carrier, coolly proceeded to prove, by some convenient witnesses, that at the time the goods were delivered to its line at Savannah by the Central of Georgia Railway Company said goods were in substantially the same condition as they were when delivered by the Merchants and Miners' Transportation Company to the plaintiffs in Baltimore.

While there was, it is respectfully maintained, manifest error in taking the case away from the jury so far as the Central of Georgia Railway Company was concerned, and while therefore The Paper Mills Company are entitled to have the judgment reversed on its appeal, The Paper Mills Company does not wish to disturb the judgment rendered in the Court below if this Court should affirm that judgment on the appeal of the Merchants and Miners' Transportation Company.

WORTHINGTON, J., delivered the opinion of the Court.

This is an action of tort brought in the Superior Court of Baltimore City by the appellees, trading as The Paper Mills Company, against the Merchants and Miners' Transportation Company, and the Central of Georgia Railway Company, as joint defendants, to recover for damages alleged to have been sustained by the plaintiffs through the negligence, improper conduct, lack of skill and care, and wrongful action of the defendants, and each of them, in transporting a large quantity of wrapping paper and paper bags, and also certain machinery from Atlanta, in the State of Georgia, to Baltimore, in the State of Maryland. The case was before this Court at the October Term, 1907, upon the question of the sufficiency of the service of process on the Central of Georgia Railway, one of the defendants, and some of the facts are set out in the report of that appeal in 107 Md. 363.

The service of process having been held sufficient, the case proceeded to trial in the Court below against both defendants, and a judgment in that Court for $9,734.76 was obtained against the Merchants and Miners' Transportation Company, alone, the Central of Georgia Railway Company obtaining a judgment in its favor, under an instruction of the trial Court.

The unsuccessful contestants in both instances have appealed to this Court.

We will first consider the appeal of the Merchants and Miners' Transportation Company.

The learned Judge in the Court below by granting the plaintiffs' first prayer, practically decided that the whole contract of carriage between the parties is contained exclusively in the two letters, one of date June 12th, 1906, and the other of date June 25th, 1906, which passed between the plaintiffs and Mr. C. S. Hoskins, Freight Traffic Manager of the Merchants and Miners' Transportation Company, and which are printed in the record. But we think the true contract is to be found in these two letters, or rather in the one of date June 25th, 1906, and in the bills of lading issued to

the plaintiffs by the Central of Georgia Railway Company, taken and considered together.

The letters set forth merely the rates at which the goods will be carried, and the time, within which any claim for damages would be settled. It may well be assumed that when these letters were written, the well-known usage and custom of issuing bills of lading with the several shipments, were within the contemplation of the parties.

Indeed the plaintiffs in their letter of June 12th refer to the "clean B-L of the Central of Georgia for evidence" as to the condition in which the shipments would leave Atlanta, thus clearly indicating that they had in mind the receipts usually issued by carriers when goods are accepted by them for carriage.

A similar view was held by the Court of Appeals of New York in the case of *Donovan* v. *Standard Oil Company*, 155 N. Y. 112, where the Court said: "This instrument (the bill of lading) must be read with the letter referred to under which the plaintiffs entered into the general arrangement, in order to ascertain the full extent of their duties and obligations as carriers."

Having decided that the bills of lading form part of the contract of carriage, it becomes our duty to construe certain portions of them, which give rise to the controversy in this case.

The clause which gives rise to the most important question is contained in the eleventh section of these bills of lading, and is as follows: "Nor shall negligence be presumed against any carrier."

The question is how does this clause affect the burden of proof?

We think it must be given its full force. That is to say, the burden is upon the plaintiffs to show not only the injury, but also the negligence that caused the injury.

The common law presumption of negligence, where damage merely is shown, is negatived by the express stipulation of the contract. It will not suffice to prove merely that the

goods were delivered to the carrier in good condition and received by the consignee in a damaged condition, but negligence causing the injury must be proven.

In the absence of contract, the law makes the carrier an insurer, and as the goods it carries may be injured or destroyed by many causes not due to its own negligence or want of care, the carrier is as much entitled to be paid a premium for its insurance of their safe delivery at the place of destination as for the labor and expense of conveying them there. *Riley* v. *Horne,* 15 E. C. L. 551.

While the carrier may not contract against its own negligence (1 *Hutchinson on Carriers,* Sec. 450), it may contract so as to put the burden of proving the negligence upon the plaintiff.

It was so held in the case of *N. J. S. N. Co.* v. *Bank,* 6 How, 384, which was followed by our predecessors in the case of *Bankard* v. *B. & O. R. R.,* 34 Md. 197.

In the former case, MR. JUSTICE NELSON, speaking for the Supreme Court, said: "The respondents having succeeded in restricting their liability as carriers by special agreement, the burden of proving that the loss was occasioned by the want of due care, or by gross negligence, is upon the libellants, which would be otherwise in the absence of any such restriction."

In the case at bar the contract of carriage provided that if the shippers elected not to accept the reduced rates for transportation and the conditions contained in the bills of lading, they should give notice to the agent of the receiving carrier in writing, and by paying a somewhat higher rate, the carrier's common law liability would attach except as limited by the laws of the United States and of the several States, so far as any such statutes applied.

The plaintiffs deliberately chose the reduced rate, and thereby assumed under the conditions of the bills of lading which they accepted the burden of proving negligence against the carriers in case any loss or injury to the goods should

occur in the course of the transportation, and it is not for this Court to relieve them of the burden which they thus assumed.

As regards the stipulation in the bill of lading requiring any claim for loss or damage to be made in writing within thirty days after the delivery of the property, we think that such stipulation was waived by the carrier, whose agent with full knowledge raised no objection to the claim on that ground. 5 *Am. & Eng. E. Law* (2nd Ed.), 322-5.

No objection is made to the granting of the plaintiff's second prayer concerning the measure of damages, except on the ground that there is not sufficient evidence to go to the jury as to the market value of the goods at Baltimore, in either an injured or uninjured condition on their arrival in that city.

We think the evidence in this respect too meagre, but as there is a provision in the bill of lading to the effect that "the amount of any loss or damage for which any carrier becomes liable, shall be computed at the value of the property at the place and time of shipment under this bill of lading," the measure of damage should be in accordance with this provision; that is, their value should have been ascertained at Atlanta, as of the days and times of shipment. It was so held by this Court in the case of *McCoy* v. *Erie R. R. Co.*, 42 Md. 498, under a similar provision in the bill of lading in question in that case. Of course, the parties may waive this provision in the present case, if they so desire.

We think the proceedings were properly brought in tort jointly against both carriers. *B. & O. R. R. Co.* v. *Pumphrey*, 59 Md. 399; 1 *Poe Pldg.*, Secs. 296, 526, and 528; *Mershon* v. *Hobensack*, 22 N. J. L. 380.

As to the appeal of the Paper Mills Company from the action of the trial Court in dismissing the suit as against the Central of Georgia Railway Company, we think such action was proper.

The plaintiffs had closed their case without offering any evidence whatever of negligence on the part of this defendant, and by the contract of carriage under which the goods were shipped no negligence could be presumed against it from

the mere fact that the goods which had been delivered to it
in good condition were received at their destination from the
terminal carrier in a damaged condition.

For these reasons we think there was error on the part of
the learned Judge in the Court below in granting the plain-
tiffs' first and second prayers, and in refusing to grant the
defendant's second, eighth and ninth prayers, and we must
therefore reverse the judgment in No. 62, but as the plaintiffs
may be able upon a second trial to adduce evidence of negli-
gence, we will award the plaintiffs a new trial as to the
Merchants and Miners' Transportation Company.

> *Judgment in No. 62 reversed with costs
> and new trial awarded.*
> *Judgment in No. 63 affirmed with costs to
> appellee.*