# MARYLAND CASUALTY COMPANY

## *vs.*

# THE EAST BALTIMORE DRIVING ASSOCIATION, INC.

*Witness as to Value—Qualifications—Contract for Clearing Land—Damages for Breach—Notice to Surety—Waiver.*

On an issue as to the value of posts of a certain size, to be cut on particular land, under a contract which was only partially performed, a general contractor and builder, who was raised on a farm and had done considerable work in clearing timber land, had examined this land and the timber thereon both before and after it was partially cleared, and purchased posts of that size in a city within thirteen miles of the land, at the time of operations under the contract, *held* qualified to express an opinion as to the value of such posts.          p. 108

An architect, who planned and superintended the work under a contract for the clearing of certain land, and who testified that he had been an architect and engineer for about forty years, and that he was familiar with the values which he was asked to estimate, *held* qualified to express an opinion as to the value of posts of designated sizes to be cut on the land.          p. 109

Where a contract for the clearing of land provided that the contractor should have all the timber cut, but that he should furnish to the landowner therefrom a certain number of fence posts of a designated size, and the contractor abandoned the work when less than half completed, without furnishing any posts, *held* that, although the landowner did not have the work completed, and although the required number of posts could have been supplied from the trees still standing, the landowner was entitled to damages by reason of the contractor's appropriation of the timber on the part of the land which was cleared, without furnishing any posts therefrom.          pp. 109-111

As to the measure of damages, it was *held* that, under the special circumstances of the case, the proper mode of adjustment was to charge the contractor with the value of such a proportion of the total number of posts to be furnished as might be

estimated in the ratio which the acreage of the timber removed bore to the total area to be cleared, and to credit him with a due proportion of the monetary compensation provided by the contract, in consideration of the work actually done, less such amount as may have been paid.                           p. 111

That the landowner acquiesced in the removal of timber by the contractor did not involve a waiver of his right to have the fence posts furnished as stipulated.                           p. 111

That the surety on a contractor's bond, when notified by the plaintiff of a default under the contract, made no point that notice of default was not given, as provided by the bond, by registered mail and within ten days, the surety merely stating that the matter would be investigated, *held* to furnish legally sufficient evidence of a waiver of that requirement.           p. 113

*Decided November 13th, 1919.*

. Appeal from the Superior Court of Baltimore City (HEUIS-LER, J.).

The cause was argued before BOYD, C. J., BURKE, THOMAS, PATTISON, URNER and ADKINS, JJ.

*Charles T. Reifsnider*, with whom was *Walter L. Clark* on the brief, for the appellant.

*Jacob S. New* and *Julius H. Wyman*, for the appellee.

URNER, J., delivered the opinion of the Court.

The Maryland Casualty Company, as surety for Pinning and Company, a firm of contractors, executed a bond to the East Baltimore Driving Association, Incorporated, to "indemnify the obligee against any loss or damage directly arising by reason of the failure of the principal to faithfully perform" the written contract to which the bond refers and which it describes as providing "for clearing site and furnishing fence posts on eighty acres of land at Benjies Station, Maryland." In the contract itself the work to be performed by Pinning and Company, party of the first part, for the East Baltimore Driving Association, party of the second part, is

thus specified: "To cut down all trees now on the 80 acres of
land to be used by the party of the second part for a race
course, except such trees that the said party of the second
part may designate that they desire to remain standing. To
cut down all brush on said acres and to either remove same
or burn, this to be left to the discretion of the said party of
the first part. To take out of said acres of land all stumps,
and to remove them from the said land, and to burn all leaves.
And all timber cut down to be the property of the party of
the first part. To furnish on the said land 6,000 fence posts
from materials now on the land, 3,000 posts to be 7 foot long
and 3,000 to be 11 foot long." It was provided that twelve
acres of the ground should be cleared in thirty, and the re-
mainder of the tract in sixty, working days. The amount
agreed to be paid for the entire work was $1,800, of which
one-half was payable when half of the work was done, and the
balance when it was fully completed.

The pending suit on the contractors' bond was brought to
recover damages occasioned by their failure to finish the work
which the contract required them to perform. It was alleged
in the declaration that the work was begun but was after-
wards abandoned and left to a large extent unfinished. The
bill of particulars as to the damages claimed for the breach of
the contract contained four items, three of which were esti-
mates of the cost of completing the work, which in fact has
never been resumed by anyone, and the fourth item was: "To
amount of lumber, wood and trees removed from said prop-
erty in direct violation of the contract and which, under the
contract, were to be left on the premises and used as fence
posts and posts—$2,000."

Issue was joined in the case on pleas filed separately by
Pinning and Company and the Maryland Casualty Company,
and the trial resulted in a verdict and judgment in favor of
the plaintiff for $1,500. The pleas of the Casualty Com-
pany, which is the only appellant, make defense on the ground
that the plaintiff corporation did not on its part perform the
contract or comply with requirements of the bond which were

therein made conditions precedent to its enforcement. It is averred in the pleas that while the contractors performed more than one-half of the work to be done under the contract and thus became entitled to be paid one-half of the stipulated sum of $1,800, yet no part of the amount so earned was paid except the sum of $200, and that the plaintiff failed to deliver to the Casualty Company, as required by the bond, a written statement of the contractors' default within ten days after it came to the plaintiff's knowledge. There were other pleas of the same defendant, denying that the plaintiff sustained any loss on account of the alleged breach, or that any default occurred on the part of the contractors.

The record contains five bills of exceptions. From the first it appears that, after proving the contract and the bond and offering testimony tending to show that the contractors abandoned the work when much less than half of it was completed, and that they furnished no posts as required by the contract, the plaintiff called a witness who testified that he had examined the land in question and the timber on it before and since it was partially cleared by Pinning and Company, that he was a general contractor and builder, had been raised on a farm and had done considerable work in clearing timber land, and that in the spring of 1917, when operations were in progress under this contract, he bought posts of the kind it specifies for fifty cents apiece in Baltimore City, about thirteen miles distant from the land on which the work was being conducted. The witness was then asked what three thousand posts seven feet long, cut on the land in 1917, were worth. An objection to this question was overruled, and the witness answered that he would say they were worth about twenty-five cents each. The second exception was taken to a similar ruling on a question asked the same witness as to the value of eleven foot posts cut on the land at the period mentioned, and to which he replied that they were worth about thirty cents apiece.

The two exceptions just noted were based partly on the theory that the witness was not qualified to estimate the

values to which he testified. This is not a valid objection.
The proof to which we have referred as to the experience and
knowledge of the witness was sufficient to support the ruling
of the trial Court that he was qualified to express an opinion
on the subject of the inquiry. The same observation applies
to the admission, as against the third exception, of the testi-
mony of the architect, who planned and superintended the
work under the contract, as to the value of the posts to be
furnished by the contractors out of the timber on the land to
be cleared. It was testified by this witness that he had been
an architect and engineer for about forty years and that he
was familiar with the values which he was asked to estimate.
He stated that the posts, of the two sizes designated, were
worth fifty and sixty-five cents apiece, respectively.

A more important question raised on the three exceptions
we have considered is whether any evidence as to the value
of the posts is admissible in view of the fact that the plain-
tiff did not proceed to have the work completed, and did not
thus demonstrate, or otherwise prove, the extent to which the
posts could not be supplied from the trees remaining on the
property. This is a fundamental question in the case. It is
not only raised in reference to the admissibility of the evi-
dence on which the plaintiff's recovery was based, but it is
involved in some of the prayers which are presently to be dis-
cussed. The contention is that the plaintiff can recover only
for actual losses sustained as the result of the failure of the
contractors to finish the work, and that evidence as to the
value of the posts was "irrelevant unless plaintiff further
showed that it had actually purchased the posts, and was com-
pelled to do so in order to complete the contract, because there
was insufficient or no timber on the land from which posts
could be fabricated."

No effort was made to prove any loss except that which is
claimed to have resulted from the breach of the provision as
to the posts. The claims in the bill of particulars for the cost
of completing the work were abandoned, the plaintiff not
having in fact proceeded with the project, and the only testi-

mony as to damages was offered on the theory that a loss had been incurred through the removal of a large part of the timber, and the discontinuance of the work, without any of the 6,000 posts contracted for being made and left on the premises.

There is evidence to the effect that the trees were cut down and removed from about forty-five of the eighty acres to be cleared, and the area as a whole was estimated to produce from 150 to 300 posts per acre, in addition to large quantities of cordwood. It could be found, therefore, from the testimony in the case that the timber taken away would have yielded considerably more than the number of posts mentioned in the agreement, and that from the remaining timber also the specified number could be produced. But when the work was abandoned only a very small part of the ground had been cleared of stumps, according to the plaintiff's witnesses. The right of the contractors to any of the timber was conditioned upon the full performance of their contractual duties. If they had done the work agreed upon, they would have been entitled to all the timber involved in the operation, except the six thousand posts which the owner reserved. It was the purpose of the contract that the timber, not required for the stipulated number of posts, should form a substantial part of the compensation to the contractors for the work of clearing the ground. In view of their failure to continue and complete the work, their appropriation of timber, to the extent of a proportion of the posts it would have yielded, has had the effect of depriving the plaintiff of property to which it is entitled. The breach of the contract has resulted in a loss to the plaintiff of material having a value which is capable of being proven.

In order to sustain the theory of the defendants, it would be necessary to hold that notwithstanding the total breach of the contract as to the posts, the plaintiff has suffered no provable loss on that account, because if the work had been carried to completion, the posts which the contractors agreed to furnish might have been made out of the remaining trees. A

ruling to that effect would place an undue restriction upon the liability of the contractors and of the surety on their bond. The conditions presented are unusual, and the rights and responsibilities of the parties, in view of the breach of the contract, are not readily subject to precise definition, but certainly the plaintiff should not be debarred from proving an actual loss of material resulting from a particular default merely because the work as a whole has not since been finished. This case is very different from actions for damages caused by the discontinuance of work under ordinary construction contracts, where the usual inquiry is simply as to the cost of completing the work. Here the plaintiff is claiming the value of material which it has lost through a breach of contract, and in our opinion the evidence offered reflecting upon the amount of the loss was admissible.

Under the special circumstances of the case we think a proper method of adjusting the rights and liabilities existing in view of the default under the contract, from the standpoint of the plaintiff's evidence, is to charge the defendants with the value of such a proportion of the 6,000 posts contracted for as may be estimated in the ratio which the acreage of the removed timber bears to the total area to be cleared, and to credit the defendants with a due proportion of the monetary compensation provided by the contract, in consideration of the work actually done, less such amount as may have been already paid. While no instruction was proposed to this effect, the verdict rendered in the case is not necessarily inconsistent with the measure of recovery we have just defined.

The fourth exception was taken to the exclusion of testimony to the effect that the plaintiff's representatives knew of the removal of timber while the work was in progress, and made no objection. There was no injurious error in this ruling. The acquiescence of the plaintiff's agents in the removal of timber before the breach complained of did not imply any waiver of its right to have the contract fully performed according to its terms.

The only other exception relates to the prayers. None were offered by the plaintiff, but the defendant Casualty Com-

pany proposed fourteen instructions, of which the sixth, seventh, eighth, ninth, eleventh and fourteenth were granted, and the first, second, third, fourth, fifth, tenth, twelfth and thirteenth were rejected. The defendants, Pinning and Company, offered two prayers, both of which were granted.

The first prayer of the Casualty Company sought to direct a verdict in its favor, and its second and thirteenth prayers would have limited recovery to nominal damages. What we have already said is sufficient to indicate our view that these prayers were properly refused.

By the third prayer of the same defendant it was proposed to instruct the jury that there was no legally sufficient evidence to justify any allowance for the cost of completing the work of clearing the land, as mentioned in three of the items in the bill of particulars. As already stated, the plaintiff appears to have abandoned these items at the trial, and it was distinctly admitted that no such cost had been incurred. The eleventh prayer, which was granted, instructed the jury that if the plaintiff did not incur the expenses estimated in those items, they could not be allowed. It is fairly apparent from the record that the jury did not take the abandoned items into consideration in making up their verdict. While the third prayer should have been granted, it is reasonably certain that no prejudice resulted to the defendants in view of the other conditions to which we have referred.

The fourth and twelfth prayers present the theory that if, after the contractors discontinued the work, there remained on the land enough timber to supply the number and sizes of posts mentioned in the contract, then no recovery could be had on account of the removal of timber by the contractors. For the reasons stated earlier in the opinion we approve of the rejection of these prayers.

The Casualty Company's fifth prayer would have instructed the jury that according to the uncontradicted evidence the contractors did not finish twelve acres of the land in thirty working days, as required by the contract, but that the plaintiff did not send to the Casualty Company by registered mail

a written statement of such default within ten days, such notice being a condition precedent to recovery on the contractors' bond as provided by its terms, and that the verdict should therefore be for the defendant Casualty Company. There is a provision of that nature in the bond, but it is not available as an absolute bar to recovery as there is evidence tending to support the theory that it was waived. The contract was dated December 1, 1916, and the work was started several weeks later, as the plaintiff's witnesses testified. On February 16, 1917, the plaintiff's secretary wrote a letter to the Casualty Company notifying it that the terms of the contract were not being carried out and asking the company to make an investigation. In its reply the Casualty Company made no point that the notice was not given within the time prescribed by the bond, but stated that the matter would have its immediate attention. On May 7, 1917, a letter was written to the Casualty Company by Mr. Wyman, as counsel for the plaintiff, reminding the company of the previous notification that the contract was not being complied with, and stating that he had been authorized to bring suit, but before doing so he would like to confer with the company's representative. Replying to this letter the company stated that it would make a full investigation and report what could be done to arrange the matter satisfactorily. This correspondence furnished legally sufficient evidence of a waiver of the bond provision to which the fifth prayer refers, and it was properly refused. *Citizens' Mut. Fire Ins. Co.* v. *Conowingo Co.,* 113 Md. 439, 116 Md. 422; *Produce Exchange* v. *N. Y., P. & N. R. Co.,* 122 Md. 234, 130 Md. 106; *M. & M. Trans. Co.* v. *Eichberg,* 109 Md. 211.

The rejection of the tenth prayer was not injurious, as the theory it involved was sufficiently presented by the ninth prayer, which was granted.

None of the rulings show reversible error.

*Judgment affirmed, with costs.*